UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INDIAN HARBOR INSURANCE
COMPANY,

                        Plaintiff,

            v.

NL ENVIRONMENTAL MANAGEMENT
SERVICES, INC.; NL INDUSTRIES, INC.;
SAYREVILLE SEAPORT ASSOCIATES,
L.P.; J. BRIAN O'NEILL; J. BRIAN
O'NEILL PROPERTIES GROUP, L.P.;
BANK OF AMERICA, N.A.; THE
PROVIDENT BANK, N/K/A M&T BANK;
THE NORTHERN TRUST CO.;
SAYREVILLE SEAPORT ASSOCIATES
ACQUISITION COMPANY, LLC; THE
PRUDENTIAL INSURANCE COMPANY
OF AMERICA; SAYREVILLE ECONOMIC
& REDEVELOPMENT AGENCY;
MIDDLESEX COUNTY; and MERION
CONSTRUCTION MANAGEMENT, LLC,

                        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/19/13_

**MEMORANDUM**
**OPINION & ORDER**

12 Civ. 2045 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

            Plaintiff Indian Harbor Insurance Company seeks a declaration that a pollution

and remediation liability policy (the "Policy") it issued does not provide coverage to Defendants

NL Industries, Inc. ("NL") and NL Environmental Management Services, Inc. ("EMS")

(collectively, the "NL Defendants") in connection with an action pending against the NL

Defendants in the District of New Jersey (the "Raritan Baykeeper Action").  Plaintiff also claims

that a "scrivener's error" in the Policy results in unintended coverage for EMS, and that the

Policy should be reformed to correct the error and reflect the parties' true intent.

The NL Defendants have moved to transfer this case to the District of New Jersey. (Dkt. No. 37)  Plaintiff and Defendants Sayreville Seaport Associates, L.P., Sayreville Seaport Associates Acquisition Company, J. Brian O'Neill, O'Neill Properties Group, L.P., Merion Construction Management, LLC, and Prudential Insurance Company of America (collectively, the "Sayreville Defendants") oppose the motion. (Dkt. Nos. 44, 48)

For the reasons stated below, the motion will be granted.

## BACKGROUND

### I.    PARTIES

Plaintiff is a North Dakota insurance company with its principal place of business in Connecticut. (Cmplt. at p. 1 & ¶ 1)  The NL Defendants are both New Jersey corporations with principal places of business in Texas. (Cmplt. ¶¶ 2-3)  Defendant Sayreville Seaport Associates, L.P. ("SSA") is a Delaware limited partnership with its principal place of business in Pennsylvania. (Cmplt. ¶ 4)  Defendant J. Brian O'Neill resides in Pennsylvania. (Cmplt. ¶ 5) Defendant O'Neill Properties Group, L.P. ("O'Neill Properties"), is a Pennsylvania limited partnership with its principal place of business in Pennsylvania. (Cmplt. ¶ 6)  Defendant Bank of America, N.A. ("BOA") is a national association with its principal place of business in North Carolina. (Cmplt. ¶ 7)  Defendant The Provident Bank, now known as M&T Bank ("M&T"), is a national association with its principal place of business in New York. (Cmplt. ¶ 8)  Defendant Sayreville Seaport Associates Acquisition Company, LLC ("SAAC") is a Pennsylvania limited liability company with its principal place of business in Pennsylvania. (Cmplt. ¶ 10)  Defendant The Prudential Insurance Company of America ("Prudential") is a New Jersey insurance company with its principal place of business in New Jersey. (Cmplt. ¶ 11)  Defendants Sayreville Economic Redevelopment Authority ("SERA") and Middlesex County ("County") are

New Jersey municipal entities.  (Cmplt. ¶¶ 12-13)  Defendant Merion Construction Management, LLC ("Merion") is a Pennsylvania limited liability company with its principal place of business in Pennsylvania.  (Cmplt. ¶ 14)[1]

## II.   FACTS

Plaintiff issued the Policy to SSA, with a term running from October 15, 2008, to October 15, 2018.  (Cmplt. ¶ 15)  The Policy names as "Additional Named Insureds" the NL Defendants, as well as BOA, M&T, O'Neill, O'Neill Properties, SAAC, Merion, and the County.  (Cmplt. ¶¶ 19-20)  The Policy covers, inter alia, losses, remediation expenses, and related legal expenses for pollution conditions at a 440-acre property located at 100 Chevalier Avenue, Sayreville, New Jersey (the "Sayreville Site" or "Site").  (See Stoia Decl., Ex. A (Policy))  The Sayreville Site borders the Raritan River on three sides.  (Cmplt. ¶ 21)  The Site contained a lagoon system that was used for "containment and settling of effluent and storm water runoff prior to discharge into the Raritan River pursuant to a permit."  (Cmplt. ¶ 22)  Plaintiff alleges that the New Jersey Department of Environmental Protection identified NL as a "responsible party . . . with respect to contamination of sediments in the Raritan River, which is adjacent to the Sayreville Site."  (Cmplt. ¶ 27)

The Sayreville Site has been the subject of litigation in New Jersey state and federal courts for more than a decade.  The litigation has involved, inter alia, issues regarding eminent domain and environmental remediation of the site.  (Gibson Decl. ¶¶ 1-6)  In June 2008, NL, EMS, SSA, the County, and SERA entered into an Amended Settlement Agreement and Release.  Pursuant to this agreement, the Sayreville Site was condemned and funds were provided for SSA's and SERA's remediation and development of the Site.  (Id. ¶¶ 13-16)  The

---

[1]  The claims against Defendant The Northern Trust Co. were dismissed by stipulation.  (Dkt. No. 55)

settlement agreement provided that SSA would obtain an environmental insurance policy

covering the Sayreville Site and that the policy would name, as named insureds, SSA, the NL

Defendants, SERA, and the County, among others. (Cmplt. ¶ 39; NL Def. Ans. ¶ 39)  While the

Policy covers losses, remediation expenses, and related legal expenditures for pollution

conditions, it sets forth a number of exclusions.

For example, Endorsement No. 22 states:

Section IV., Exclusions, is amended by the addition of the following exclusion:

**Raritan River Sediment and Tidal Wetland Sediment**

Solely as respects NL Industries, this Policy does not apply to REMEDIATION
EXPENSE and related LEGAL EXPENSE based upon or arising from any
POLLUTION CONDITION related to any constituents in the Raritan River
sediment and tidal wetland sediment where such constituents are on, at, under,
migrating from, or have migrated from any COVERED LOCATION.

Similarly, Endorsement No. 23 states:

Solely with respects to NL Industries, Inc. this Policy is amended as follows:

Section IV., EXCLUSIONS, is amended by the addition of the following:

**Natural Resource Damage**

Based upon or arising from any NATURAL RESOURCE DAMAGE.
Section IV., EXCLUSION, 5. Insured's Property/Bailee Liability is deleted in its
entirety and replaced with the following:

**5.    Insured's Property/Bailee Liability**

with respect to PROPERTY DAMAGE only, to property owned, leased or
operated by, or in the care, custody or control of the insured, even if such
PROPERTY DAMAGE is incurred to avoid or mitigate LOSS OR
REMEDIATION EXPENSE which may be covered under this POLICY.
This exclusion does not apply to RESTORATION COSTS.

The Policy provides that in the event of a dispute as to coverage, "the Company

and the INSURED will submit to the jurisdiction of the State of New York and will comply with

4

all the requirements necessary to give such court jurisdiction." The Policy further provides that New York law will govern. (Policy at § IX.K-L)

On August 11, 2009, Raritan Baykeeper, Inc. and the Edison Wetlands Association, Inc., two New Jersey-based not-for-profit corporations, filed the Raritan Baykeeper Action in the United States District Court for the District of New Jersey against, among others, NL, EMS, SSA, O'Neill Properties, SERA, and the County. (Gibson Decl. ¶ 28; see Raritan Baykeeper, Inc. v. NL Indus., Inc., No. 3:09-cv-04117 (D.N.J.)) Plaintiffs in the Raritan Baykeeper Action seek relief that would require NL and EMS to remediate contaminated sediments in the Raritan River in the vicinity of the Sayreville Site. (Cmplt. ¶ 30; Gibson Decl. ¶ 29) NL, EMS, SSA, SERA, O'Neill Properties, and the County each tendered defense of the Raritan Baykeeper Action to Plaintiff, asserting that the Policy covered the claims raised in that case. (Gibson Decl. ¶ 30)

In a June 8, 2009 letter, Plaintiff agreed to provide a defense to EMS, SSA, O'Neill Properties, and the County, but denied coverage to NL, citing the exclusion set forth in Endorsement No. 22. (Gibson Decl. ¶ 32; NL Def. Ans., Ex. D (XL Insurance June 8, 2009 Ltr.) at 1, 6-7) In a December 8, 2009 letter, Plaintiff confirmed coverage for EMS – subject to a reservation of rights – but again denied coverage to NL, citing Endorsement No. 22. (Id. ¶ 31; NL Def. Ans., Ex. C (XL Insurance Dec. 9, 2009 Ltr.) at 1, 9, 12-13)

In a July 28, 2010 letter, however, Plaintiff advised NL and EMS that it had decided to deny EMS's claim for coverage under the Policy. Plaintiff explained that it had concluded that

> there is no distinction between NL Industries and EMS regarding the ownership/liability for the Sayreville site. NL created EMS in 1998 to restructure NL's environmental liabilities at many sites, including the Sayreville site. The Sayreville site and all of NL's prior liabilities relating to that site were transferred to EMS in 1998.

5

More specifically, coverage for EMS is precluded under Endorsement 22 of the Policy. The term "NL Industries" as used in Endorsement 22, entitled Raritan River Sediment and Tidal Wetland Sediment, was intended to include[] EMS and therefore precludes coverage for the claims asserted in the complaint. All parties understood that neither NL Industries nor EMS would be covered for the Raritan River Sediment and Tidal Wetland Sediment ("Raritan River Liabilities").

. . . .

Based on the information we have now, Indian Harbor denies any claim for coverage by EMS for the claims asserted by Raritan Baykeeper, Inc., d/b/a NY/NJ Baykeeper and Edison Wetlands Association, Inc. . . .

(Gibson Decl. ¶ 33; NL Def. Ans., Ex. E (XL Insurance July 28, 2010 Ltr.) at 1)

On January 17, 2012, Plaintiff filed the instant action in Supreme Court of the State of New York, New York County, seeking a declaratory judgment that the Policy does not provide coverage to NL and EMS for the Raritan Baykeeper Action, and seeking reformation of the Policy to explicitly provide that EMS has the same coverage, and is subject to the same exclusions, as NL. (Cmplt. ¶¶ 32-60 and ad damnum clause)

On March 19, 2012, the NL Defendants removed the case to this Court. (Dkt. No. 1) All defendants have filed Answers, some of which include counterclaims. (Dkt. Nos. 7, 14, 15, 23, 30) Plaintiff has filed an Answer to the counterclaims. (Dkt. No. 25)

On August 16, 2012, the NL Defendants filed the instant motion to transfer this case to the District of New Jersey. (Dkt. No. 37)

## DISCUSSION

## I.    LEGAL STANDARD

Title 28, United States Code, § 1404(a) states that "[f]or the convenience of parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "The purpose of § 1404(a) is 'to prevent waste of time,

6

energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" In re Stillwater Min. Co. Sec. Litig., No. 02 Civ. 2806(DC), 2003 WL 21087953, at *2 (S.D.N.Y. May 12, 2003) (quoting Trehern v. OMI Corp., No. 98 Civ. 0242(RWS), 1999 WL 47303, at *1 (S.D.N.Y. Feb. 1, 1999) (internal quotations omitted)).

Absent consent, "[a] motion to transfer venue requires a two-part inquiry: first, whether the action to be transferred might have been brought in the transferee court; and second, whether considering the convenience of parties and witnesses, and the interest of justice, a transfer is appropriate." Fuji Film Co., Ltd. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (quotations omitted). The NL Defendants, as the moving parties here, bear the burden of demonstrating that transfer is proper. See Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir. 1950).

## II.   ANALYSIS

### A.   Whether This Action Might Have Been Brought in the District of New Jersey

An action "might have been brought" in another forum if "subject matter jurisdiction, personal jurisdiction, and venue would have . . . been proper in the transferee court at the time the action was filed." Ivy Soc'y Sports Group, LLC v. Baloncesto Superior Nacional, No. 08 CIV. 8106 (PGG), 2009 WL 2252116, at *3 (S.D.N.Y. July 28, 2009). The Sayreville Defendants do not dispute that this action might have been brought in the District of New Jersey. (Sayreville Def. Br.) Plaintiff argues, however, that this matter could not have been brought in New Jersey, because a mandatory forum selection clause in the Policy requires any action to be brought in New York. (Pltf. Br. 6) Plaintiff concedes, however, that absent the forum selection clause, the matter might have been brought in New Jersey. (Id. at 6 n.3)

7

On a motion to transfer, courts consider a forum selection clause not in connection with the "might have been brought" inquiry, but rather in connection with the convenience/interest of justice prong of the Section 1404(a) test. See, e.g., Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 58 (S.D.N.Y. 2001) (analyzing forum selection clause in the context of "this forum's convenience to the parties"); Bombardier Capital Inc. v. Solomon, No. 00 CIV. 0848 (RMB), 2000 WL 1721138 at *2-*3 (S.D.N.Y. Nov. 17, 2000) (noting that "the existence of a forum selection clause" is one "interest of justice" factor to consider in connection with the second prong of the Section 1404(a) test).

There is no issue as to subject matter jurisdiction:  there is complete diversity and the amount in controversy exceeds $75,000.  (Notice of Removal, ¶¶ 6-21; Cmplt. ¶¶ 1-14)  As to personal jurisdiction, New Jersey courts have personal jurisdiction over the NL Defendants, Prudential, SERA, and the County because they are all residents of New Jersey. (Cmplt.¶¶ 2-3, 11-13)

Personal jurisdiction exists over the other defendants based on New Jersey's long-arm statute.

> The New Jersey long-arm statute establishes New Jersey's jurisdiction reach to be conterminous with that allowed under the U.S. Constitution, subject only to due process of law. Thus, the central inquiry is whether [a] Defendant has "certain minimum contacts with . . . [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

Pro Sports Inc. v. West, 639 F. Supp. 2d 475, 480 (D.N.J. 2009) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  Here, all of the remaining defendants are intimately involved with the Sayreville Site and therefore have more than sufficient minimum contacts with New Jersey.  For example, O'Neill Properties is the master developer for the re-development of the Sayreville Site, and O'Neill Properties created SSA and SAAC for the sole purpose of

facilitating the re-development project. (Gibson Decl. ¶¶ 7-8) O'Neill is the founder and chairman of O'Neill Properties. (Id. ¶ 10) Merion is the principal contractor for the Sayreville Site redevelopment project. (Id.) BOA and Northern Trust were part of the 2008 settlement – they loaned the money used by SSA and SERA to pay the NL Defendants "just compensation" to settle the condemnation litigation and provided funds for SSA's and SERA's remediation and development of the Sayreville Site. (Id. ¶ 16) M&T served as a mortgagee of the Site. (Cmplt. ¶ 8) In sum, it is undisputed, and the Court finds, that New Jersey courts have personal jurisdiction over all defendants. Venue is likewise proper in the District of New Jersey, because "a substantial part of the events . . . giving rise to the claim occurred" in that district. 28 U.S.C. § 1391(b)(2). As discussed below, negotiation of the Policy, and negotiation of the settlement agreement that led to the Policy, took place in part in New Jersey.

Because this Court finds that this matter "might have been brought" in the District of New Jersey, it is necessary to consider the second prong of the Section 1404(a) test – the convenience/interest of justice factors.

**B.    Section 1404(a) Factors**

After determining "that the action sought to be transferred is one that 'might have been brought' in the transferee court," a judge must next "determine whether, considering the 'convenience of parties and witnesses' and the 'interest of justice,' a transfer is appropriate." Berman v. Informix Corp., 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998) (quoting Wilshire Credit Corp. v. Barrett Capital Management Corp., 976 F. Supp. 174, 180 (W.D.N.Y. 1997)). In making this determination, courts generally consider the following factors:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the

9

forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

Berman, 30 F. Supp. 2d at 657 (citations omitted). "There is no rigid formula for balancing these factors and no single one is determinative." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (citing S & S Mach. Corp. v. Gen. Motors Corp., No. 93 Civ. 3237, 1994 WL 529867, at *7 (S.D.N.Y. Sept. 28, 1994)). "Instead, weighing the balance 'is essentially an equitable task' left to the Court's discretion." Citigroup, 97 F. Supp. 2d at 561 (citing First City Nat. Bank & Tr. Co. v. Simmons, 878 F.2d 76, 80 (2d Cir. 1989)). "In making this determination, the Court [also considers] the existence of a forum selection clause." Bombadier Capital Inc., 2000 WL 1721138 , at *2-*3.

### 1.   The Forum Selection Clause

The Policy contains the following language regarding jurisdiction, venue, and governing law:

> **K.**   **Jurisdiction and Venue --** It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company and the INSURED will submit to the jurisdiction of the State of New York and will comply with all the requirements necessary to give such court jurisdiction.  Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

> **L.**   **Choice of Law --** All matters arising hereunder including questions related to the valid[] interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

(Policy at §§ IX.K-L)  Plaintiff argues that the forum selection clause is mandatory, and requires that the motion to transfer be denied.  (Pltf. Br. 5-6)  The NL Defendants argue, and the Sayreville Defendants concede, that the Policy's forum selection clause is permissive, and not mandatory.  (NL Def. Reply Br. 2-3; Sayreville Def. Br. 5)

10

"A so-called permissive forum clause only confers jurisdiction in the designated

forum, but does not deny [litigants their] choice of forum, if jurisdiction there is otherwise

appropriate." Phillips v. Audio Active Ltd., 494 F.3d 378, 386 (2d Cir. 2007). "Mandatory

forum selection clauses, on the other hand, require that disputes must be brought in the

designated forum, to the exclusion of all other fora where jurisdiction may also lie." Global

Seafood Inc. v. Bantry Bay Mussels Ltd., 659 F.3d 221, 225 (2d Cir. 2011) (emphasis in

original). "A forum selection clause is considered mandatory where: (1) 'it confers exclusive

jurisdiction on the designated forum' or (2) 'incorporates obligatory venue language.'" Id.

(quoting Phillips, 494 F.3d at 386). "The general rule in cases containing forum selection

clauses is that when only jurisdiction is specified the clause will generally not be enforced

without some further language indicating the parties' intent to make jurisdiction exclusive." Id.

(quoting John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors Inc., 22

F.3d 51, 52 (2d Cir. 1994)). "Forum selection clauses lacking any clear exclusionary or

obligatory language – i.e., 'specific language of exclusion' – are, therefore, permissive and not

subject to a presumption of enforceability." Id.

Here, the forum selection clause is permissive, not mandatory. The language used

– "the Company and the INSURED will submit to the jurisdiction of the State of New York and

will comply with all the requirements necessary to give such court jurisdiction" (Policy at

§ IX.K) – is similar to language that courts in this Circuit have found to be permissive. For

example, in Reliance Ins. Co., the insurance policy at issue stated that the parties "will submit to

the jurisdiction of the State of New York and will comply with all the requirements necessary to

give such court [sic] jurisdiction." Reliance Ins. Co., 155 F. Supp. 2d at 58. The court held that

"[t]his forum selection clause is not mandatory, but permissive, because the requirement of a

clear indication of exclusivity has not been met." Id.; see also Boutari, 22 F.3d at 53 (finding contract language stating that "[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts" to be a permissive forum selection clause).

"'[When] a forum-selection clause is permissive, it is unnecessary to apply the . . . heightened scrutiny standard for mandatory forum-selection clauses. Rather, the Court should weigh the [§ 1404(a)] factors outlined [above]."[2] Bombardier Capital Inc., 2000 WL 1721138 at *4 (quoting Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 979 (2d Cir. 1993). Accordingly, the Court will consider the forum selection clause in its analysis of the convenience/interest of justice factors.

### 2.    Convenience of Witnesses

The convenience of parties and witnesses is considered "the essential criteria under the venue statute," First City Federal Savings Bank v. Register, 677 F. Supp. 236, 237 (S.D.N.Y. 1988), and "the most significant factor." Nieves v. Am. Airlines, 700 F. Supp. 769, 773 (S.D.N.Y. 1988). The convenience of non-party witnesses is accorded more weight than that of party witnesses. Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) (citing Nieves v. Am. Airlines, 700 F. Supp. 769, 773 (S.D.N.Y. 1988)).

The NL Defendants argue that "if parol evidence becomes necessary the potential key witnesses will be those individuals with knowledge of the facts and circumstances

---

[2]  Where parties have agreed to a mandatory forum selection clause, the Supreme Court has stated that the "clause should control absent a strong showing that it should be set aside." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). A party seeking to escape application of a mandatory forum selection clause must "clearly show that [its] enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." Id.

surrounding the negotiation of the Amended Settlement Agreement, including counsel for the NL Defendants, SERA, the County and SSA – all of whom are located in New Jersey or in the suburbs of Philadelphia, Pennsylvania." (NL Def. Br. 20 (citing Gibson Decl. ¶ 13)) The NL Defendants also argue that all of the witnesses with knowledge of the negotiations regarding the Policy are located in New Jersey or the suburbs of Philadelphia. (Id.)

Plaintiff and the Sayreville Defendants argue that the NL Defendants have not identified witnesses by name, nor provided the substance of their anticipated testimony. (Pltf. Br. 11-12; Sayreville Def. Br. 4-5) The Sayreville Defendants also argue that there is only one non-party witness in this case – Matthew Winters, an independent broker who negotiated and procured the Policy – and that this District is more convenient to Winters because "he has office space and support available to him in this District." (Sayreville Def. Br. 4-5)

The Court concludes that the NL Defendants have identified potential witnesses with sufficient specificity. They have identified numerous potential witnesses by name and have described their proposed testimony, albeit in general terms. (See NL Def. Reply 4-5) In any event, "a specific showing is required only when the movant seeks a transfer solely 'on account of the convenience of witnesses.' . . . [Where a party] seeks a transfer 'on account of' several factors, his failure to specify key witnesses and their testimony is not fatal." Beckerman v. Heiman, No. 05 CIV. 5234(BSJ)(GWG), 2006 WL 1663034 at *5 (S.D.N.Y. June 16, 2006) (quoting Connors v. Lexington Ins. Co., 666 F.Supp. 434, 455 (E.D.N.Y. 1987)). In contrast to the NL Defendants' showing, Plaintiff and the Sayreville Defendants have not identified any potential witness who resides in this District. As for Winters, they have not explained why it would be inconvenient for him to testify in New Jersey when he will be travelling from the Philadelphia area, which is closer to New Jersey than New York. (See Winters Decl. ¶ 2)

13

Accordingly, this factor favors transfer.

### 3.   Plaintiff's Choice of Forum

"A plaintiff's choice of forum 'is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer.'" Hershman v. UnumProvident Corp., 658 F. Supp. 2d 598, 601 (S.D.N.Y. 2007) (quoting Royal & Sunalliance, 167 F. Supp. 2d at 576); see also DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 28 (2d Cir. 2002). Nonetheless, "'a plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the chosen forum.'" Ivy Soc'y Sports Group, LLC, 2009 WL 2252116, at *9 (quoting 800–Flowers, Inc. v. Intercontinental Florist, Inc., 860 F.Supp. 128, 134 (S.D.N.Y. 1992)). Moreover, where, as here, a plaintiff has filed suit outside of its home forum, a court may consider that fact in determining the amount of deference owed to plaintiff's choice of forum:

> [t]he Second Circuit has clarified the amount of deference a plaintiff is entitled when he files a lawsuit outside of his home forum; the more such a decision is "dictated by reasons that the law recognizes as valid, the greater the deference that will be given to" it; the more it appears the decision is "motivated by forum shopping reasons," the less deference will be accorded to it.

Hershman, 658 F. Supp. 2d at 601 (quoting Iragorri v. United Technologies Corp., 274 F.3d 65, 73 (2d Cir. 2001)).

Here, the NL Defendants argue that Plaintiff's choice of forum should be afforded less deference because "New York has no connection to this action and the locus [of] operative facts are primarily in New Jersey and secondarily in Pennsylvania." (NL Def. Br. 19) Plaintiff asserts that "keeping the matter in New York will comport with the bargained for expectations of the parties," citing the Policy's forum selection clause. (Pltf. Br. 10) However, as discussed

above, the forum selection clause is permissive, not mandatory.  And Plaintiff has not proffered any other connection between this action and New York.

Given that (1) Plaintiff is not located in New York; (2) none of the potential witnesses are located in New York; (3) the locus of operative facts appears to be elsewhere; and (4) the forum selection clause is permissive rather than mandatory, the Court concludes that Plaintiff's choice of forum is entitled to little weight.

### 4.    Location of Relevant Documents

The location of documentary evidence is typically considered a neutral factor in the transfer analysis.  See Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.").

The NL Defendants argue that "many of the documents related to the Amended Settlement Agreement and the Policy are located at counsels' offices in New Jersey and Pennsylvania." (NL Def. Br. 20-21)  Plaintiff and the Sayreville Defendants argue that any documents can easily be transported to New York.  (Pltf. Br. 15; Sayreville Def. Br. 5)

Because relevant documents can easily be provided whether the case is in New York or New Jersey, this factor is neutral.

### 5.    Convenience of Parties

The NL Defendants argue that New Jersey would be more convenient for ten of the thirteen remaining parties because these ten parties are all located in or near New Jersey. (NL Def. Br. 21)  Plaintiff concedes that New Jersey would be just as convenient for it as New York.  (Pltf. Br. 15-16)  The Sayreville Defendants argue that the existence of the forum-selection clause indicates that New York is more convenient for the parties.  (Sayreville Def. Br.

5-6)  While the forum selection clause might be read to indicate that the parties believed New York courts would be convenient, the existence of the clause says nothing about whether New Jersey courts would also be convenient.

Because the vast majority of the parties are located in or near New Jersey, this factor weighs in favor of transfer.

### 6. <u>Locus of Operative Facts</u>

"The locus of operative facts is an 'important factor to be considered in deciding where a case should be tried.'" <u>Age Group Ltd. v. Regal Logistics, Corp.</u>, No. 06 Civ. 4328(PKL), 2007 WL 2274024, at *3 (S.D.N.Y. Aug. 8, 2007) (quoting <u>800-Flowers, Inc. v. Intercontinental Florist, Inc.</u>, 860 F. Supp. 128, 134 (S.D.N.Y. 1992)).  "To determine where the locus of operative facts lies, courts look to 'the site of events from which the claim arises.'" <u>Id.</u> (quoting <u>800-Flowers</u>, 860 F. Supp. at 134).

The NL Defendants argue that "the terms of the Policy were negotiated in New Jersey and Pennsylvania" and therefore "although it could be argued that either New Jersey or Pennsylvania should be the locus of operative facts in this case, it is clear that New York is not." (NL Def. Br. 21-22)  Plaintiff and the Sayreville Defendants concede that New York is not the locus of operative facts.  (Pltf. Br. 15; Sayreville Def. Br. 6)  They argue that the locus of operative facts is Pennsylvania, because that is where the Policy was signed.  (<u>Id.</u>)

The fact that all parties concede that there is little to no connection between the facts of this case and this District weighs heavily in favor of transfer.  <u>See</u> <u>Manao Investments, Inc. v. Stouts Brunswick Associates Ltd. P'ship</u>, No. 96 CIV. 7100 (HB), 1997 WL 53200 at *2 (S.D.N.Y.  Feb. 10, 1997) ("'Where there is no material connection between the district and the operative facts, . . . the interests of justice require the transfer of [the] action.'" (quoting <u>Brown</u>

v. Dow Corning Corp., No. 93 Civ. 5510 (AGS), 1996 WL 257614, at *2 (S.D.N.Y. May 15, 1996))).  Moreover, at least some of the negotiations regarding the settlement agreement that led to the Policy, and negotiations regarding the Policy itself, occurred in New Jersey.  (Gibson Decl. ¶¶ 13-14, 19)  Accordingly, this factor weighs in favor of transferring this action to New Jersey.[3]

### 7.     Availability of Process to Compel Attendance of Unwilling Witnesses

"'The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions.'"  Billing v. Commerce One, Inc., 186 F. Supp. 2d 375, 378 (S.D.N.Y. 2002) (quoting Arrow Electronics v. Ducommun, Inc., 724 F. Supp. 264, 266 (S.D.N.Y. 1989)).  Under Federal Rule of Civil Procedure 45, a district court can enforce a trial subpoena served on a witness within the state or within 100 miles of the court.  However, "even if [a party's] witnesses do refuse to testify, deposition testimony is an acceptable alternative."  Farberware Licensing Co. LLC v. Meyer Mktg. Co., No. 09 Civ. 2570(HB), 2009 WL 1357956, at *2 (S.D.N.Y. May 14, 2009).

The parties agree that no potential witness has been identified who is outside either this Court's or the District of New Jersey's subpoena power.  (NL Def. Br. 22; Pltf. Br. 16; Sayreville Def. Br. 6)  Accordingly, this factor is neutral.

---

[3]  While Plaintiff argues that in a case involving an insurance coverage dispute, the site where the policy was executed is the locus of operative facts (see Pltf. Br. 15), the cases demonstrate that courts also consider where negotiation of the policy took place.  See, e.g., Am. S.S. Owners Mut. Prot., 474 F. Supp. 2d at 485 (finding that New York was the "center of operative facts" and noting that policy was negotiated in New York); Royal Ins. Co. of Am. v. Tower Records, No. 02 Civ. 2612, 2002 WL 31385815, at *4 (S.D.N.Y. Oct.22, 2002) (California was locus of operative facts where insurance policy was negotiated, purchased, and delivered in California); Avemco Ins. Co. v. GSF Holding Corp., No. 96 Civ. 8323 (LAP), 1997 U.S. Dist. LEXIS 13716, at *18 (S.D.N.Y. Sept. 11, 1997) (New Jersey was locus of operative facts where insurance policy at issue arose as a result of telephone conversations made in New Jersey and correspondence sent and received in New Jersey).

8.      **The Forum's Familiarity With The Governing Law**

Although it is undisputed that New York law governs here, "'[t]his Court has routinely held that the "governing law" factor is to be accorded little weight on a motion to transfer venue . . . because federal courts are deemed capable of applying the substantive law of other states.'" Ivy Soc'y Sports Group, 2009 WL 2252116, at *8 (quoting Prudential Sec. Inc. v. Norcom Development, Inc., No. 97 Civ. 6308(DC), 1998 WL 397889, at *6 (S.D.N.Y. July 16, 1998)).  Accordingly, this factor is neutral.

9.      **Relative Means of the Parties**

A court may consider the relative means of the parties "where [an economic] disparity between the parties exists." KPMG Consulting, Inc. v. LSQ II, LLC, No. 01 Civ. 11422, 2002 WL 1543907, at *4 (E.D.N.Y. July 12, 2002) (internal quotations and citation omitted).  "A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." Federman Assocs. v. Paradigm Medical Indus., Inc., No. 96 Civ. 8545, 1997 WL 811539, at *4 (S.D.N.Y. Apr. 8, 1997).

All of the parties in this case are sophisticated businessmen, corporations, or municipalities.  There has been no showing that litigating this action in New York or New Jersey would impose an undue hardship on any party.  Accordingly, this factor is neutral.

10.     **Judicial Economy and Trial Efficiency**

"[C]ourts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." Williams v. City of New York, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006).

The NL Defendants argue that this case is "directly related to the Raritan Baykeeper Action which remains pending in the District of New Jersey and involves many of the same parties named as defendants here." (NL Def. Br. 18)  They also note that there have been numerous other actions related to the Sayreville Site filed in New Jersey state and federal courts. (Id.)  Plaintiff and the Sayreville Defendants argue, however, that the litigation history of the Sayreville Site is "immaterial" here, because the claims are entirely different than those brought in the New Jersey actions.  (Pltf. Br. 10; Sayreville Def. Br. 8)

The Court concludes that the existence of other litigation in New Jersey related to the Sayreville Site is a neutral factor.  While the outcome of this case will determine whether Plaintiff has to pay EMS's legal fees in the Raritan Baykeeper Action, the two cases involve completely different claims, and cannot be considered "related actions."

As for trial efficiency, "it is undeniable that the Southern District of New York is one of the busiest district courts in the country."  Atl. Rec. Corp. v Project Playlist, Inc., 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009).  "The relative docket conditions of the transferor and transferee courts are relevant to the determination of a motion to transfer venue pursuant to 28 U.S.C. § 1404(a)."  Eichenholtz v. Brennan, 677 F. Supp. 198, 202 (S.D.N.Y. 1988).

The NL Defendants have cited to statistics maintained by the Administrative Office of the United States Courts indicating that substantially fewer cases are filed in the District of New Jersey than in this District, and many fewer cases remain pending for three or more years in New Jersey.  (See NL Def. Br. 16-17 (citing Judicial Business of the United States Courts, 2011 Annual Report of the Director Hon. Thomas F. Hogan, Director, available at http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2011/JudicialBusiness2011.pdf))  Plaintiff disputes the import of these statistics, noting that the same report indicates that this

19

District terminates more cases than the District of New Jersey, and that this District has recently

seen a decrease in pending cases while New Jersey has seen an increase.  (Pltf. Br. 13)  The

Sayreville Defendants argue that that the more important statistic is "the median time from filing

to trial[, which] is actually 13 months shorter in this District than in the District of New Jersey

for all civil cases (30.6 months vs. 43.6 months)."  (Sayreville Def. Br. 8-9 (citing Federal Court

Management Statistics September2011 (available at www.uscourts.gov/statistics/

federalcourtmangementstatistics/districtcourtssep2011.aspx))

       Macro statistics for this District and the District of New Jersey cannot establish

with certainty where this case would more quickly reach trial.  The Court concludes that this

factor is neutral.

*     *     *     *

       Most of the factors that this Court must consider in conducting a Section 1404(a)

analysis are neutral.  However, all of the non-neutral factors – including convenience of the

witnesses, convenience of the parties, and locus of operative facts – all favor transfer to the

District of New Jersey.  As previously stated, Plaintiff's choice of forum is not dispositive here,

given that Plaintiff has no connection to New York, none of the witnesses are located in New

York, the locus of operative facts is outside New York, and the forum selection clause negotiated

by the parties is permissive rather than mandatory.  While New York law governs this dispute,

this factor "is to be accorded little weight on a motion to transfer venue . . . because federal

courts are deemed capable of applying the substantive law of other states.'"  Ivy Soc'y Sports

Group, 2009 WL 2252116, at *8.  Because the non-neutral factors favor transfer to the District of

New Jersey, the NL Defendants' motion to transfer will be granted.

20

## CONCLUSION

For the reasons stated above, the NL Defendants' motion to transfer this action to the District of New Jersey is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 37) and to transfer this action to the District of New Jersey.

Dated: New York, New York
       March 19, 2013

SO ORDERED.

_Paul S. Gardephe_

Paul G. Gardephe
United States District Judge

21