**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| INDIAN HARBOR INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>         v.<br><br>NL ENVIRONMENTAL MANAGEMENT SERVICES, INC., et al.,<br><br>                    Defendants. | Civil Action No. 13-1889 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

The issue to be addressed by the competing motions for summary judgment currently before the Court is whether the facts in this case warrant finding that Plaintiff Indian Harbor Insurance Company's ("Plaintiff" or "Indian Harbor") failure to exclude Defendant NL Environmental Management Services, Inc. ("EMS") from coverage for claims related to sediment contamination and natural resource damage to the Raritan River ("NRD and River Liability Claims") was a mistake. As an initial matter, it is undisputed that by its terms the subject insurance policy ("Policy") unambiguously provides that Indian Harbor is required to cover EMS for NRD and River Liability Claims. Nonetheless, asserting that the Policy's terms were the result of "scrivener's error," Indian Harbor seeks reformation of the Policy and a declaration that it is not required to provide coverage to EMS for NRD and River Liability Claims. Indian Harbor, Defendant Sayreville Seaport Associates, L.P. ("SSA"), and EMS have each moved separately for summary judgment. (ECF Nos. 123, 124, 125.) In addition, Indian Harbor filed a cross-motion for summary judgment against SSA on its counterclaim for reformation. (ECF No. 132.) The

Court, having considered the parties' submissions, decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants Indian Harbor's motion for summary judgment and denies EMS and SSA's motions and Indian Harbor's cross-motion for summary judgment.

I. **Facts**

   A. **The Settlement Agreement**

   This matter concerns an insurance policy issued in connection with the settlement of litigation regarding the Sayreville Economic and Redevelopment Agency's ("SERA") acquisition by eminent domain of a 440-acre property located along the banks of the Raritan River in Sayreville, New Jersey ("Sayreville Site"). (*See generally* Verified Compl., ECF No. 1; EMS's Answer ¶ 13, ECF No. 5; April 4, 2009 Letter, ECF No. 7.) The underlying litigation involved issues regarding eminent domain and environmental remediation of the Sayreville Site. (SSA's Statement of Material Facts Not in Dispute ("SOF"), Ex. 1 ("Settlement Agreement"), ECF No. 123-3.) On April 1, 2008, a settlement agreement was reached in the underlying litigation between SSA, EMS, NL Industries, Inc., SERA, and the County of Middlesex. (*Id.*) The Settlement Agreement states that it was "made and entered into . . . by and among NL Industries, Inc., a New Jersey corporation ("NL"); NL Environmental Management Services, a New Jersey corporation ["EMS"] (together with NL, the "NL Companies"); [SERA] . . . ;[SSA]; and the County of Middlesex . . . ." (*Id.* at 1.) Throughout the negotiations, the parties referred to the settlement as a "four party agreement" between SSA, EMS, NL Industries Inc., SERA and the County, treating EMS and NL Industries, Inc. as if they were one party. (EMS's Response to SSA's SOF ¶ 2, ECF

2

No. 135-1.) Indian Harbor was not a party to the Settlement Agreement. (*See* Settlement Agreement.)

Pursuant to the Settlement Agreement, the Sayreville Site was condemned and funds were provided for SSA and SERA's remediation and development of the site. (*Id.*) Importantly, the Settlement Agreement provides that SSA:

> shall, at its sole cost and expense, obtain and maintain one or more environmental insurance policies . . . to cover: (i) any and all third-party claims for bodily injury and property damage (excluding NRD Liabilities) relating to known environmental conditions at the Property; and (ii) any and all claims for bodily injury, property damage, or remediation liability associated with unknown environmental conditions at the Property, . . . including but not limited to all necessary operation and maintenance related to such unknown environmental conditions, if any. The NL Companies, SERA and the County shall be named as additional insureds on each such policy. . . . [E]ach such policy shall: . . . be subject to a final review and approval by the NL Companies, which approval shall not be unreasonably withheld, conditioned or delayed. Notwithstanding anything to the contrary above, the NL Companies shall not be named as an additional insured with respect to any coverage provided for NRD Liabilities and Raritan River Liabilities.

(*Id.* § 9(vi).) Thereafter, the parties to the Settlement Agreement continued to negotiate the terms of settlement and executed two amended agreements, the June Amendment and the September Amendment (collectively, the "Settlement Agreements"). (SSA's SOF, Exs. 2, 3, ECF No. 123-3.)

### B. The Policy

Pursuant to the Settlement Agreements, on October 15, 2008, SSA obtained the Policy from Indian Harbor. (SSA's SOF, Ex. 13 ("Policy"), ECF No. 123-4.) In Endorsement #001 of the Policy, the NL Companies – NL Industries, Inc. and EMS – are listed separately as additional insureds of the Policy. (*Id.*) Endorsements #022 and #023, which exclude coverage for "Raritan river sediment and tidal wetland sediment" claims and "natural resource damages" claims ("NRD

3

and River Liability Coverage"), however, refer only to NL Industries, Inc. (*Id.*) In 2009, the NL Companies were each named as defendants in the Raritan Baykeeper Action, where the plaintiffs sought to require both NL Companies to remediate contaminated sediments in the Raritan River. *Raritan Baykeeper, Inc. v. NL Indus., Inc.*, No. 09-4117 (D.N.J. filed Aug. 11, 2009) ("Raritan Baykeeper Action"). Pursuant to the endorsements in the Policy, Indian Harbor disclaimed NRD and River Liability Coverage in the Raritan Baykeeper Action for both NL Industries and EMS, and Indian Harbor also filed the instant action seeking a declaratory judgment that neither of the NL Companies are entitled to Coverage and the Policy should be reformed to reflect the same. (Compl. ¶¶ 31-35.)

### C. Decision on Motion for Judgment on the Pleadings

Before discovery commenced, Indian Harbor, SSA, and EMS filed motions for judgment on the pleadings, or in the alternative, summary judgment. (ECF Nos. 63, 70, 80.) In its decision on the parties' motions for judgment on the pleadings, the court held that the pleadings were sufficient to state a claim for reformation.[1] (Op., Feb. 25, 2014, ECF No. 88.) In addition, the court noted that "*on this record*, there is no proof supporting a conclusion other than Plaintiff's failure to include [EMS] in [the endorsements regarding excluding it from Coverage] was an innocent mistake." (*Id.* at 8) (emphasis added).) Nonetheless, the court declared that a question of fact remained as to "whether the parties – particularly, Defendant [EMS] – intended to be excluded from coverage as stated in Endorsement[s] #022 and #023." (*Id.*) Furthermore, the court concluded that genuine disputes of fact existed with respect to whether the Settlement Agreement and the Policy form "part of a single transactions [such that they] are to be read together" or

---

[1] On March 10, 2015, this matter was reassigned from the Honorable Joel A. Pisano to the undersigned. (ECF No. 111.)

4

whether the court was limited to the four corners of the Policy to determine the intent of the parties.

(*Id.*)

### D. Discovery

Thereafter, the parties engaged in discovery. In discovery, the parties produced various e-mail correspondence regarding their negotiation of the Policy. In particular, the following correspondence relates to the reference to "NL Industries, Inc." in the Policy:

- The December 14, 2007 correspondence from Indian Harbor's underwriter to SSA's insurance broker containing a quote for environmental insurance coverage that does not include any reference to EMS. (Decl. of Charles J. Stoia ("Stoia Decl."), Ex. II, ECF No. 124-8; Indian Harbor's SOF ¶ 51, ECF No. 124-1.)

- Indian Harbor's underwriter's notes from a February 15, 2008 telephone conference with SSA's counsel and insurance broker, which state that "NL Industries will not get cov[erage] for [Natural Resource Damages ("NRD")]." (Stoia Decl., Ex. S, ECF No. 124-7.)

- The February 26, 2008 Draft Policy in which the term "NL Industries" is listed as an additional insured and was put in the NRD exclusion. (Stoia Decl., Ex. JJ, ECF No. 124-8.)

- The February 27, 2008 e-mail correspondence from SSA's insurance broker to Indian Harbor's underwriter stating that the contamination exclusion "similar to NRD, should only apply to NL Industries . . . ." (Stoia Decl., Ex. T, ECF No. 124-7.)

- The March 11, 2008 Draft Policy, which was sent by SAA's counsel to EMS's counsel, refers to "NL Industries" in its endorsements. (Certification of Christopher Gibson ("Gibson Cert."), Ex. 6, ECF No. 125-5)

- The March 28, 2008 e-mail correspondence from SSA's insurance broker to Indian Harbor's underwriter stating that the latest version of the settlement agreement that is being negotiated includes "additional requirement[s] regarding the environmental insurance SSA will be obtaining," and lists "waiver of subrogation in favor of the *NL Companies*" as one of these requirements. (Stoia Decl., Ex. GG, ECF No. 124-8) (emphasis added).)

- The April 1, 2008 Settlement Agreement, executed by SSA, SERA, NL Industries Inc., and EMS, which states that "NL Companies shall not be named as an

additional insured with respect to any coverage provided for NRD Liabilities and Raritan River Liabilities." (Settlement Agreement, § 9(a)(vi).)

- April 4, 2008 Policy draft, which included a "waiver of subrogation in favor of NL Companies," but listed "NL Industries" as an additional insured, on the NRD liability exclusion, and Raritan River liability exclusion. (Stoia Decl., Ex. LL, ECF No. 124-8.)

- April 15, 2008 E-mail from SSA's insurance broker to Indian Harbor's underwriter stating to change the "NL Industries" reference in endorsement #011 (additional insured) to "NL Industries, Inc." and "NL Environmental Management Services, Inc.," and likewise, the "NL Companies" reference in endorsement #026 (waiver of subrogation) to "NL Industries, Inc." and "NL Environmental Management Services, Inc." (Stoia Decl., Ex. NN, ECF No. 124-9.)

- April 29, 2008 E-mail from SSA's counsel to EMS's counsel, among others, stating that "primarily from a substantive standpoint, [SSA] is leaning towards [choosing] XL" as the insurer. (Certification of Christopher Gibson ("Gibson Cert."), Ex. 9, ECF No. 125-5.) Attached to the e-mail is a draft Policy dated April 28, 2008, in which Endorsement #030 Relating to Disposal states that the coverage exclusion applies: "solely to NL Industries, Inc. and NL Environmental Management Services, Inc." (*Id.*)

- July 23, 2008 Draft Policy in which reference to "NL Industries" in the previous draft had been changed to "NL Industries, Inc." in endorsement #022, which pertains to the NRD liability exclusion. (Gibson Cert., Ex. 10, ECF No. 125-6.)

In addition, SSA's counsel and insurance broker and Indian Harbor's underwriter, testified that the failure to change the term "NL Industries" to "NL Industries, Inc." and "NL Environmental Management Services, Inc." in the NRD and Raritan River exclusions was a mistake. (Stoia Decl., Ex. P ("Michael Winters Dep.") 34:23-35:24, 41:23-42:4, 45:19-47:22, ECF No. 124-7; Stoia Decl., Ex. W ("Jonathan H. Spergel Dep.") 38:6-41:16, 44:9-22, ECF No. 124-7; Stoia Decl., Ex. Q ("Brett McGovern Dep.") 138:14-139:4, ECF NO. 124-7.) EMS's counsel testified that before Indian Harbor issued the Policy it was his understanding that obtaining Coverage for EMS "would not be feasible . . . . or that it would be cost prohibited [sic]." (Stoia Decl., Ex. M ("Patrick M. Flynn Dep.") 62:1-6, ECF No. 124-7.) In addition, EMS's counsel testified that he first understood that the Policy would provide Coverage to EMS, "whenever [he] saw . . . the first time [he] saw [a

6

draft Policy] that contained the endorsement that excluded NL Industries only and did not exclude EMS." (*Id.* at 110:23-25.) EMS's counsel could not, however, recall having any nonprivileged discussions with anyone or creating any written documents in 2008 communicating to either SSA or Indian Harbor that this was his understanding of the Policy. (*Id.* at 111:2-113:9.) Likewise SSA's counsel testified that he was never involved in "discussions with anyone to suggest that [EMS] should be treated any differently than NL Industries, Inc. in regard to [the Policy]." (Jonathan H. Spergel Dep. 43:25-44:8.)

The parties also produced one e-mail message that was sent from EMS's counsel to SSA's counsel regarding the Policy. (Stoia Decl., Ex. SS, ECF No. 124-10.) In this e-mail message, which was sent approximately two weeks before the Policy was issued, EMS's counsel states that his client "has raised a few questions/comments regarding the environmental insurance policy documents, which are listed below. We would appreciate your thoughts and/or efforts to obtain the suggested revisions." (*Id.*) This e-mail includes comments on various endorsements in the Policy, but does not address the endorsements that pertain to the NRD and River Liability Coverage exclusion or any other references to NL Industries in the Policy. (*Id.*) SSA's counsel then sent this e-mail message to SSA's insurance broker, who sent it to Indian Harbor's underwriter, asking: "Can you please review these comments and provide me with some feedback ASAP?" (Gibson Cert., Ex. 12, ECF No. 125-6.) In an e-mail message addressed to SSA's insurance broker, Indian Harbor's underwriter responded to the comments on the Policy. (*Id.*)

## II. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law

identifies which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Id.* at 250. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists, then the court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992). In addition, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 209 (D.N.J. 2001).

"The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468 (D.N.J. 2002). "When ruling on cross-motions for summary judgment, the court must consider the motions independently . . . and view the evidence on each motion in the light most favorable to the party opposing the motion." *Id.* at 468-69 (internal citations omitted). "That one of the cross-motions is denied does not imply that the other must be granted." *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d 785, 793 (D.N.J. 2015).

### III. <u>Analysis</u>[2]

The summary judgment motions of Indian Harbor, SSA, and EMS all present the same question: whether Indian Harbor's failure to exclude EMS from NRD and River Liability Coverage was a mistake that warrants reformation. In their motions, Indian Harbor and SSA argue that various provisions of the Settlement Agreement, as well as, the parties' general treatment of the NL Companies as a single entity during the settlement negotiations support their assertion that the failure to specify that both NL Industries and EMS were excluded from NRD and River Liability Coverage was scrivener's error, and that they are entitled to reformation of the Policy to exclude EMS from NRD and River Liability Coverage. (Indian Harbor's Moving Br. 10-19, ECF No. 124-2; SSA's Moving Br. 3-6, ECF No. 123-1.) EMS, however, argues that the claims for reformation fail, because, notwithstanding any proof that *Indian Harbor* and *SSA* agreed to exclude EMS from NRD and River Liability Coverage, the parties cannot show that *EMS* agreed to this exclusion. (EMS's Moving Br. 17, ECF No. 125-1.) In their motions for summary judgment, both Indian Harbor and SSA argue that EMS's agreement to the exclusion is irrelevant to their claims for reformation because: (1) EMS is not one of the "contracting parties" to the Policy, and only the "contracting parties'" intentions are relevant to a claim for reformation (Indian Harbor Moving Br. 3-9); and (2) the Policy is to be treated as a separate policy with respect to each insured, and, therefore, since both SSA and Indian Harbor agree that they intended to exclude EMS from NRD and River Liability Coverage, the Policy may be reformed with respect to SSA's claim against Indian Harbor, even if the Court finds that the Policy should not be reformed with respect

---

[2] The Policy provides, and the parties do not dispute, that New York law governs the substantive issues presented in the motion sub judice. (*See* Policy § IX(L).)

9

to Indian Harbor's claim against EMS (SSA's Moving Br. 6-9). For the reasons discussed below, the Court finds that the Policy should be reformed.

In its motion for summary judgment, Indian Harbor argues that "[w]hile an insured, [EMS] was not a 'contracting' party to the Policy, and therefore, what it purportedly understood is irrelevant [to its claim for reformation] as a matter of law." (Indian Harbor's Moving Br. 3.) In support of this argument, Indian Harbor relies on the Honorable Kevin McNulty, U.S.D.J.'s distinction between "contracting parties" and "insureds" in *Illinois National Insurance Company v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d at 797. Applying New Jersey law, in *Wyndham*, Judge McNulty found that Wyndham, which was listed as an "Insured Owner" on the subject policy, was not a "contracting party," and thus found that Wyndham's understanding of the Policy's coverage was "secondary to the central issue of the intent shared by [the contracting parties]." *Id.* To distinguish the present case from *Wyndham*, EMS argues that, in contrast to its participation in drafting the Policy, Wyndham "admitted that it had not participated in, reviewed, or 'had an opportunity to form an understanding' of an allegedly erroneous amendment to an insurance policy." (EMS's Reply Br. 7, ECF No. 140 (quoting *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 232 (3d Cir. 2011).) EMS notes that here "[i]t is undisputed that EMS *did* review numerous Policy drafts, *did* provide written comments, and *did* have the right to 'final review and approval' of all Policy terms."[3] (*Id.* at 7.) Even construing these facts in the light most favorable to EMS, however, the Court finds that these facts do not provide a basis for finding that EMS made or received a promise from the insurer – Indian Harbor.

---

[3] Section 9(a)(vi) of the Settlement Agreement provides that the Policy shall, inter alia, "be subject to a final review and approval by the NL Companies . . . ." (Settlement Agreement § 9(a)(vi).) Indian Harbor was not a party to the Settlement Agreement.

10

Stating that an "additional named insured is not a party to [an] insurance contract", one authority noted:

> The additional named insured is neither a promisee nor a promisor [to the insurer] because [its] intent is not addressed to the insurer, and the insurer's intent is not addressed to [it]. *See* RESTATEMENT (SECOND) OF CONTRACTS § 2 (1981). "The promisor and promisee are the 'parties' to a promise; a third person who will benefit from the performance is a 'beneficiary.'" RESTATEMENT (SECOND) OF CONTRACTS § 2 cmt. g. Further, there is no meeting of the minds between the additional named insured and the insurer. *See Vyn v. Northwest Casualty Co.*, 47 Cal. 2d 89, 93 (1956); *Cook v. Michigan Mut. Liab. Co.*, 154 Ind. App. 346, 351 (1972).

Mark Pomerantz, *Recognizing the Unique Status of Additional Named Insureds*, 53 Fordham L. Rev. 117, 124, 124 n.31 (1984). The Court finds that this analysis is applicable here.

It is undisputed that EMS's counsel did not communicate directly with Indian Harbor regarding the Policy. (EMS's Response to Indian Harbor's SOF ¶ 87, ECF No. 134-1 ("Undisputed that EMS . . . directed comments/concerns regarding the Policy to the insurance broker and/or SSA's counsel and those comments were directed to Indian Harbor.").) Although EMS's counsel "raised a few questions/comments regarding the [Policy]" in a September 30, 2008 e-mail message, this e-mail message was directed to SSA's counsel. (Gibson Cert., Ex. 12.) SSA's counsel then communicated with Brett McGovern ("Mr. McGovern"), the underwriter employed by XL Insurance, an affiliate of Indian Harbor, to underwrite the Policy on behalf of Indian Harbor, regarding these proposals. Thereafter, Mr. McGovern adopted some of the proposals that had been submitted to SSA by EMS and rejected others; these changes were reflected in e-mail correspondence and revised drafts of the Policy, which Mr. McGovern directed to SSA's counsel.

Construing the facts in the light most favorable to EMS, the Court finds that EMS negotiated with SSA – not Indian Harbor – regarding the Policy. Negotiation between an additional named insured and the insured is not unusual. "An additional named insured . . .

11

expressly bargains with the named insured for the benefit of coverage." *Transport Ins. Co. v. Superior Court of L.A. Cty.*, 166 Cal. Rptr. 3d. 612, 619 (Cal. Ct. App. 2014). This negotiation between the additional named insured and the insured does not make the additional named insured a party to the contract with the insurer.[4] *See, e.g., id* (finding that the additional named insured is a third-party beneficiary to the insurance contract); *Endurance Am. Specialty Ins. Co. v. Century Sur. Co.*, 46 F. Supp. 3d 398, 423 (S.D.N.Y. 2014), *rev'd on other grounds*, 630 F. App'x 6 (2d Cir. 2015) (treating an additional insured as a non-contracting party to the insurance policy); *Hatchwell v. Blue Shield of Calif.*, 244 Cal. Rptr. 249, 253 n.5 (Cal. Ct. App. 1998) (stating that wife's investigation of the insurance plan and recommendation of the plan to her husband, the insured, did not make wife a contracting party).[5] Likewise, the provision in the Settlement Agreement, which gives EMS the right to review and approve the Policy, does not render EMS a contracting party with respect to Indian Harbor, because Indian Harbor is not a party to the Settlement Agreement. (Settlement Agreement §9(a)(vi).) Furthermore, the definition of "insured" in the Policy, while relevant to issues of coverage, does not alter the identity of the

---

[4] In addition, to the extent that EMS relies on such negotiation to contend that SSA was acting as its agent in obtaining the Policy (EMS's Opp'n Br. 18, ECF No. 134), this argument does not alter the Court's analysis because an insured is bound by their agent's understanding of coverage. *See Ribacoff v. Chubb Grp. of Ins.*, 2 A.D.3d 153, 154-55 (N.Y. App. Div. 1st Dep't 2003) (on a claim for reformation stating that insureds are "bound by their agent's understanding" of coverage).

[5] EMS's reliance on Indian Harbor's Answer to paragraph fifteen of EMS's Counterclaim as proof of EMS's involvement in the negotiation of the Policy is misplaced. As this answer is contravened by the deposition testimony and documentary evidence discussed above, the Court is not bound by this alleged admission. *See PPX Enters. Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984) (recognizing that a court is entitled to disregard a party's admissions if the evidence contrary to the admission is substantial) (citing *Loftin and Woodward, Inc. v. United States*, 577 F.2d 1206, 1232 (5th Cir. 1978)). Likewise, the Court disregards the sentence in Indian Harbor's brief in opposition to EMS's motion to transfer regarding EMS's involvement in the negotiation of the Policy, because it is not supported by admissible facts and is contravened by both deposition testimony and documentary evidence.

parties who negotiated the Policy. Thus, the Court finds that EMS was not a "contracting party" with respect to the Policy

Although EMS is not a "contracting party" with respect to the Policy, its intent is nonetheless relevant to the claim for reformation. EMS's "intent is relevant to the construction of the [Policy] because the intent of [SSA] in requesting added coverage is directly dependent on the bargain that [EMS] made with [SSA]." *See Recognizing the Unique Status of Additional Named Insureds*, 53 Fordham L. Rev. at 129-30 (cited in *Endurance Am. Specialty Ins. Co.*, 46 F. Supp. 3d at 423) ("Despite the fact that the additional named insured is not a party to the insurance contract, [its] intent is relevant to the construction of that contract because the intent of the named insured in requesting the added coverage is directly dependent on the bargain that the additional named insured made with the named insured."). EMS and SSA's intent with respect to NRD and River Liability Coverage "is reflected by the language of, and the circumstances surrounding, the agreement to procure" NRD and River Liability Coverage. *See Recognizing the Unique Status of Additional Named Insureds*, 53 Fordham L. Rev. at 129-30; *see also Endurance Am. Specialty Ins. Co.*, 46 F. Supp. 3d at 422 (stating that a contract to "procure broad and comprehensive general liability coverage for [general contractor]" is evidence of what insured and the additional named insured intended the insurance policy to cover).

Here, SSA's agreement to procure insurance on behalf of EMS is contained in the Settlement Agreement. The Settlement Agreement expressly provides that "the NL Companies [defined to include EMS] shall not be named as an additional insured with respect to any coverage provided for NRD Liabilities and Raritan River Liabilities." (Policy § 9(a)(vi).) In addition, SSA's counsel and insurance broker and Indian Harbor's underwriter testified that the failure to change the term "NL Industries" to "NL Industries, Inc." and "NL Environmental Management Services,

Inc." in the NRD and Raritan River coverage exclusions was a mistake. (Michael Winters Dep. 34:23-35:24, 41:23-42:4, 45:19-47:22; Jonathan H. Spergel Dep. 38:6-41:16, 44:9-22; Brett McGovern Dep. 138:14-139:4.) Furthermore, EMS's counsel testified that before Indian Harbor issued the Policy it was his understanding that obtaining NRD and River Liability Coverage for EMS "would not be feasible . . . . or that it would be cost prohibited [sic]," and that he could not recall having any nonprivileged discussions with anyone or creating any written documents in 2008 communicating to either SSA or Indian Harbor that it was his understanding the Policy provided coverage to EMS for NRD and Raritan River liabilities. (Patrick M. Flynn Dep. 62:1-6, 111:2-113:9.)

Accordingly, construing the facts in the light most favorable to EMS, and mindful that a party seeking reformation is required to establish mutual mistake by "clear and convincing evidence," *see Healy v. Rich Prod. Corp.*, 981 F.2d 68, 73 (2d Cir. 1992), the Court finds that Indian Harbor has established that the failure to exclude EMS from NRD and River Liability Coverage was scrivener's error and that it is entitled to reformation of the Policy to reflect the intent of the contracting parties – SSA and Indian Harbor – to exclude EMS from NRD and River Liability Coverage. In addition, the Court denies EMS's motion for summary judgment, which, like its opposition to Indian Harbor's motion for summary judgment, is predicated on its contention that EMS did not agree to the NRD and River Liability Coverage exclusion. Furthermore, having found that the Policy should be reformed with respect to both EMS and SSA, SSA's counterclaim against Indian Harbor for reformation as between only Indian Harbor and SSA is moot. Accordingly, the Court denies SSA's motion for summary judgment on its counterclaim and grants Indian's Harbor cross-motion on this claim.

## IV. Conclusion

For the reasons set forth above, Indian Harbor's motion for summary judgment and cross motion for summary judgment on SAA's counterclaim are granted; EMS's motion for summary judgment is denied; and SSA's motion for summary judgment on its counterclaim is denied as moot. An order consistent with this Memorandum Opinion shall be issued.

s/Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** June 30, 2016